UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID SCOTT TEMPLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-1536** |
| **DARREL VANNOY, WARDEN** | **SECTION "B"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.   Factual and Procedural Background

The petitioner, David Scott Temple ("Temple"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On February 6, 2015, Temple was charged by Bill of Information in St. Tammany Parish with one count of aggravated second degree battery and one count of second degree kidnapping.[3] He entered a not guilty plea to the charges on February 19, 2015.[4]

The State intended to prove at trial that, between November 22 and 24, 2014, Temple imprisoned his girlfriend in their shared residence.[5] Over the course of that weekend, Temple

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 2/6/15.

[4]St. Rec. Vol. 1 of 3, Minute Entry, 2/19/15.

[5]Although the state courts did not provide a findings of fact, the State's proposed facts were presented to the state trial court in a pretrial Notice of Intent to Introduce Other Crimes Evidence, St. Rec. Vol. 1 of 3, 8/6/15.

repeatedly, physically abused the victim and refused to allow her to leave. On November 22, 2014, Temple physically beat the victim with a flashlight, two metal candle holders, and his belt. The victim suffered a fractured patella from being hit by a candle holder.

Temple also reportedly rammed the victim's head into a hard floor before cutting her clothes off with a pocket knife to leave her completely nude. Subsequent to this, he dragged her by the hair outside where he fastened her to the back of his truck with a chain and dog collar and proceeded to drive around the field adjacent to their residence in "doughnut" fashion. Temple eventually unfastened her, and attempted to chase her in the field with his vehicle. Upon returning inside the residence, the victim was made to take a shower and clean herself. Temple also threatened to kill her, as well as her young daughter, and detailed how he would do so.

The following day, Temple made the victim clean up the house in an attempt to eliminate any sign of violence or criminal activity. She eventually found refuge through the assistance of a neighbor who had returned home from the weekend on November 24, 2014. Temple was arrested on November 25, 2014, in Washington Parish pursuant to an arrest warrant.

On August 10 and 12, 2015, Temple was tried before a jury.[6] Following the lunch recess on the second day of trial, Temple advised his appointed counsel and the state trial court that he wished to plead guilty.[7] After discussions before the Court, Temple entered pleas of guilty to both counts and to a multiple bill filed by the State.[8] The Trial Court sentenced Temple to concurrent sentences of 15 years in prison on count one and 60 years in prison as a second offender on count

---

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 8/10/15; Trial Minutes, 8/12/15.

[7]St. Rec. Vol. 1 of 3, Trial Minutes, 8/12/15; Guilty Plea Transcript, 8/12/15.

[8]St. Rec. Vol. 1 of 3, Trial Minutes, 8/12/15; Guilty Plea Transcript, 8/12/15; Multiple Bill, 8/12/15.

two, with the latter sentence to be served without benefit of probation or suspension of sentence and without benefit of parole for the first two years.[9]

Temple's conviction became final thirty (30) days later, on September 11, 2015, when he did not seek reconsideration of the sentence or move for leave to appeal. La. Code Crim. P. art. 914;[10] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.").

On December 21, 2015, Temple signed and submitted to the state trial court an application for post-conviction relief in which he alleged that he was denied his right to a direct appeal.[11] On February 22, 2016, the Trial Court denied relief finding that Temple knowingly waived his right to appeal during the guilty plea colloquy.[12] Temple did not seek review of this ruling.

On March 30, 2016, Temple signed and submitted to the state trial court a second application for post-conviction relief in which he asserted the following:[13] (1) he was denied effective assistance of counsel; and (2) the Trial Court abused its discretion by accepting the guilty pleas. On May 10, 2016, the Trial Court denied relief holding that Temple failed to prove

---

[9]St. Rec. Vol. 1 of 3, Trial Minutes, 8/12/15; Guilty Plea Transcript, 8/12/15; Reasons for Judgment, 9/29/15.

[10]Louisiana law requires a criminal defendant to move for leave to appeal within thirty (30) days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1). Failure to move timely for appeal under Art. 914 rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

[11]St. Rec. Vol. 1 of 3, Application for Post-Conviction Relief, 12/23/15 (dated 12/21/15).

[12]St. Rec. Vol. 1 of 3, Trial Court Order, 2/22/16.

[13]St. Rec. Vol. 1 of 3, Application for Post-Conviction Relief, 4/4/16 (dated 3/30/16).

3

ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and that the second issue was repetitive of his prior application, citing La. Code Crim. P. art. 930.4.[14]

The Louisiana First Circuit Court of Appeal denied Temple's related writ application on September 22, 2016, finding that Temple's pleas and waiver of his rights were knowingly and voluntarily made, and the ineffective assistance of counsel claim was waived by the unconditional guilty pleas.[15] On January 12, 2018, the Louisiana Supreme Court denied Temple's writ application holding that he failed to prove ineffective assistance of counsel under *Strickland* and failed to meet his burden of proof on the second claim.[16]

## II. Federal Petition

On February 14, 2018, the clerk of this Court filed Temple's federal petition for habeas corpus relief in which he asserts two grounds for relief:[17] (1) he received ineffective assistance of counsel; and, (2) the state trial court abused its discretion by accepting the guilty pleas.

The State filed a response in opposition to Temple's petition alleging that his claims are without merit.[18] In his reply, Temple reiterates his arguments in support of his claims.[19]

## III. General Standards of Review

---

[14]St. Rec. Vol. 1 of 3, Trial Court Order, 5/10/16.

[15]St. Rec. Vol. 2 of 3, 1st Cir. Order, 2016-KW-0713, 9/22/16; 1st Cir. Writ Application, copy dated 5/26/15.

[16]*State ex rel. Temple v. State*, __ So.3d __, 2018 WL 460735, at *1 (La. Jan. 12, 2018); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2016-KH-1900, 1/12/18; La. S. Ct. Writ Application, 10/20/16 (dated 10/5/16).

[17]Rec. Doc. No. 1.

[18]Rec. Doc. No. 6

[19]Rec. Doc. No. 7.

4

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which is deemed filed in this Court no later than February 12, 2018.[21] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record establishes that Temple's petition was timely, state court review was exhausted, and no claim is in procedural default. The Court will address the claims.

## IV. Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination

---

[20] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Temple's petition on February 12, 2018, and opened the case when the filing fee was paid. The official stamp of the prison legal programs department reflects that the pleading was received from Temple on February 12, 2018, for electronic mailing to the Court. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law

6

if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**V.      Ineffective Assistance of Counsel**

Temple alleges that he was denied effective assistance of counsel when his counsel failed to present an intoxication defense and, according to the fee bill submitted to the public defender's office, counsel did not spend enough time preparing for the case. Temple suggests that he "was virtually forced to plead guilty" because counsel failed to interview witnesses, investigate the

7

allegations, or prepare a possible intoxication defense.[22] Temple asserted this claim on state post-conviction review, which ultimately was summarily denied by the Louisiana Supreme Court under *Strickland*.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland* is the appropriate standard for judging the performance of counsel when a defendant enters a plea of guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

Applying *Strickland* under *Hill* in the context of a plea, the deficiency prong is satisfied by a showing that "'counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 687-88). "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

---

[22]Rec. Doc. No. 1, p. 8.

conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).

To prove prejudice, the defendant must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). In the context of a guilty plea, "[i]n order to satisfy . . . [Strickland's] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693). In this context, "'[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. Thus, conclusory allegations with no showing of effect on the proceedings do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."

9

*Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id*. (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

In this case, Temple's claims of ineffective assistance are conclusory and not based on any specific proof or fact. Temple assumes his counsel was ill prepared based on the reimbursement time sheets submitted by him. The record, however, does not support a conclusion that counsel provided less than effective assistance or was unprepared to present a defense. Temple insisted on changing his plea during the presentation of the State's case and before his counsel had any opportunity to put on a defense or call any witnesses. Counsel cannot be presumed to have failed to present a defense or call witnesses when there was no opportunity to do so before the plea was entered. Temple also places great weight on counsel's time commitment rather than the quality of representation. His claim admittedly is based strictly on the unsupported supposition that the time spent was not adequate to defend against the State's case.

10

This conjecture is not sufficient to meet his burden of establishing that more investigation or preparation was required. When a habeas petitioner alleges a failure of his counsel to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting Report and Recommendation). Similarly, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).

Temple has failed to establish in any court that any further investigation was needed or that the investigation or any other witness would have uncovered exculpatory evidence as he vaguely contends. Temple also suggests perhaps that his trial counsel should have interviewed his family about his proclivity to drink. He is not clear, however, what exculpatory information this would have disclosed, especially since he has not presented any proof that he was actually intoxicated during the commission of these crimes. Temple's generalized claims remain unsupported and

11

conclusory which is not sufficient to establish a deficiency in or prejudice from his counsel's performance. *Moawad*, 143 F.3d at 948; *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Nevertheless, even if counsel "rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary." *Gallow v. Cooper*, 505 F. App'x 285, 294 (5th Cir. 2012) (quoting *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994)). Temple's sworn statements at his plea hearing refute his arguments that his plea was not knowing and voluntary or was somehow compelled by his counsel's performance.

As background, the plea offer accepted by Temple was not the first offer on the record. Prior to selection of the jury, the Court engaged in discussions with Temple about a plea offer presented by the State.[23] Temple rejected the offer and chose to proceed to trial. The Court questioned Temple at that time about his understanding of the charges and the jury trial process and about his educational background. Temple personally expressed his understanding and readiness for trial.

The next day, after the testimony of two officers and presentation of numerous pictures of the victim's injuries, the State advised the Court that the parties had reached a plea resolution. Specifically, Temple agreed to plead guilty to both counts and would plead guilty to the multiple bill as to the second count for which he would receive a 60-year concurrent sentence.[24]

---

[23]St. Rec. Vol. 1 of 3, Trial Minutes, 8/10/15.

[24]St. Rec. Vol. 1 of 3, Trial Minutes, 8/12/15; Guilty Plea Transcript, p. 2, 8/12/15.

Temple engaged in discussions with counsel before the pleas, and repeatedly indicated his remorse and desire to avoid taking the victim through an unnecessary trial.[25] In response to the State's presentation of the deal, appointed counsel stated that he was prepared to try the case.[26] He further stated, "I had a quite frank discussion with Mr. Temple and his parents, who were sitting behind us, where Mr. Temple spontaneously asked that he change his plea to guilty."[27] Temple himself advised the Court that this was correct.

After Temple was sworn under oath, the Court engaged in an extensive colloquy about his background, his constitutional rights, and his understanding of the proceedings and the charges against him, including the sentencing consequences. Temple also stated he was satisfied with the services of his attorney:[28]

BY THE COURT:  Are you satisfied with your lawyer's work?

BY MR. TEMPLE:  Yes.

BY THE COURT:  Did he explain your rights to you, sir?

BY MR. TEMPLE:  Yes.

Temple never indicated that he felt his lawyer was unprepared for trial or unable to adequately and effectively represent him. The state trial court also asked the following question:[29]

BY THE COURT:  Has anyone forced or coerced you to plead guilty.

BY MR. TEMPLE:  No, ma'am.

---

[25] St. Rec. Vol. 1 of 3, Guilty Plea Transcript, pp. 3-4, 8/12/15.

[26] *Id.* at pp. 3-4.

[27] *Id.* at p. 4.

[28] *Id.* at pp. 15-16.

[29] *Id.* at p. 15.

Again, at no point did Temple tell the state trial court that he felt forced to plead guilty because of his counsel's performance. Instead, he clearly advised the Court that he was entering the guilty plea because he in fact committed the crimes charged.[30] His plea was knowingly and voluntarily made, as will be further discussed below, and therefore any claim of ineffective assistance of counsel prior to the plea must fail.

Temple's sworn declarations at his plea hearing contradict his claim that his counsel's performance virtually forced him to plead guilty or that counsel otherwise failed properly to advise him with respect to the plea of guilty. Temple chose to enter the plea of guilty and by all accounts in the record did so knowingly and voluntarily of his own accord and not because of some contrived notion of unprepared or ineffective assistance of counsel. He has not established that but for any action by his counsel, he would not have entered the plea.

For these reasons, Temple has failed to establish that he was denied effective assistance of counsel or that the state courts' denial of relief on this issue was contrary to or an unreasonable application of federal law. He is not entitled to relief on this claim.

## VI.   **Knowing and Voluntary Pleas**

Temple claims that his pleas of guilty to the charges and the multiple bill were not knowingly and voluntarily made because he was not an educated person and had a known drinking problem. As addressed previously, the record reflects that Temple agreed to plead guilty to both aggravated second degree battery and second degree kidnapping and would plead guilty to the multiple bill as to the second count for which he would receive a 60-year concurrent sentence.[31]

---

[30]*Id.* at p. 15.

[31]St. Rec. Vol. 1 of 3, Trial Minutes, 8/12/15; Guilty Plea Transcript, p. 2, 8/12/15.

14

Temple discussed the plea at length with his appointed counsel before addressing the state trial court, with whom he also spoke extensively before the plea.[32]

Temple first asserted this claim of an unknowing and involuntary plea in his second state application for post-conviction relief, which was denied by the Louisiana Supreme Court which held that Temple failed to meet his burden of proof on the issue.

The validity of a guilty plea is a question of law, although historical facts are entitled to a presumption of correctness. *See Parke v. Raley*, 506 U.S. 20, 35 (1992) (citing *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983)); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1988). The Court must therefore determine if denial of relief was contrary to, or an unreasonable application of, federal law.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Montoya*, 226 F.3d at 404 (citing *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). A plea therefore "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Thus, a petitioner generally may not "collaterally attack a voluntary and intelligent" plea. *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Pleas are involuntary when induced by threats, improper promises, deception, or

---

[32]St. Rec. Vol. 1 of 3, Guilty Plea Transcript, 8/12/15.

15

misrepresentation. *See Amaya*, 111 F.3d at 389. "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead . . . without being coerced to do so, the . . . plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

A plea qualifies as intelligently given when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "To be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequences.'" *Hernandez*, 234 F.3d at 255 (quoting *Boykin*, 395 U.S. at 244). "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990); *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996). A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes. *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir.), *cert. denied*, 474 U.S. 838 (1985); *Hernandez*, 234 F.3d at 256-57 (with respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence).

Louisiana law follows the same directives in its requirements under the provisions of La. Code Crim. P. art. 556.1 regarding guilty pleas to a felony.[33] Thus, Temple's guilty pleas are

---

[33]For example, La. Code Crim. P. art. 556.1(A) provides in relevant part as follows:
A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:

16

constitutionally valid if he understood the nature of the charges against him and the constitutional protections being waived and was aware of his sentence exposure. *See James*, 56 F.3d at 666 (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).

The record reflects that Temple, after being placed under oath, understood the proceedings, the waivers he made, the confession of guilt to the charges, and the negotiated sentence. The state trial court directly engaged with Temple to determine his age, education background, ability to read and write, his ability to drive, and his ability to handle his personal and financial affairs.[34] Temple also stated that he was not under the influence of narcotics or alcohol at that time.[35]

Specific to the charges, the state trial court read the elements required to prove each count and the sentencing ranges for each count.[36] Temple indicated his understanding of both the elements and respective sentencing ranges. The state trial court explained Temple's constitutional

---

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. [. . .]
(3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
(4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.
B. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement.
C. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney and the defendant or his attorney. If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered.

[34]St. Rec. Vol. 1 of 3, Guilty Plea Transcript, pp. 6-9, 8/12/15.

[35]*Id*. at pp. 9-10.

[36]*Id*. at pp. 10-12.

17

rights, including his right to counsel, to trial with or without a jury, to confront and cross-examine witnesses against him, to require the State to prove each element beyond a reasonable doubt, to subpoena witnesses, to the privilege against self-incrimination, and to appeal.[37]  The Court made clear to him that by pleading guilty, he was waiving all of those rights.[38]  Temple indicated that he understood all of the constitutional rights explained to him and stated "Yes," when asked if he still wished to waive all of these rights and plead guilty because he was in fact guilty.[39]

To assure his understanding, the state trial court "start[ed] over with that question," and again asked Temple, "Do you wish to waive all of your Constitutional rights?"[40]  Temple again answered, "Yes."[41]  He also answered "Yes," to the Court's next question, "And do you wish to plead guilty because you have in truth and in fact committed these crimes?"[42]  Temple also acknowledged that he had not been forced or coerced into pleading guilty.

Following this, the state trial court reviewed with Temple the specific terms of the plea agreement.  The Court also confirmed that Temple was satisfied with his counsel and his counsel's

---

[37]*Id.* at pp. 12-13.

[38]*Id.* at p. 13.

[39]*Id.* at p. 14.

[40]*Id.*

[41]*Id.* at pp. 14-15.

[42]*Id.* at p. 15.

18

explanations of his rights.[43] The State and appointed counsel then set forth the stipulation with regard to the factual basis for the plea.[44]

Following acceptance of the pleas to the underlying charges, the Trial Court repeated this exercise with respect to the multiple offender bill.[45] The Court advised Temple that he had the right to a hearing on the allegations, to have the State prove the allegations, and to remain silent at that hearing. Temple expressed his understanding of those rights and his desire to waive those rights. He admitted the allegations in the bill and that he was not coerced or forced to enter the plea.[46]

Contrary to Temple's arguments, the record is eminently clear that the constitutional requirements for a knowing and voluntary plea were fully met. Temple knew he was pleading guilty to the charges of aggravated second degree battery and second degree kidnapping and the multiple bill filed against him. He knew the sentence exposure and that the plea agreement would result in concurrent sentences of no more than 60 years after the multiple offender enhancement. He acknowledged that he understood the charges, the consequences of his plea, and made a free waiver of his constitutional rights. He conceded several times that his reason for entering the plea was because he was in fact guilty.

---

[43]*Id.* at pp. 15-16.

[44]*Id.* at p. 16.

[45]*Id.* at pp. 19-20.

[46]*Id.* at p. 20.

19

Considering the record as a whole, Temple's guilty pleas were knowingly and voluntarily entered with full the protections required under Supreme Court precedent. The state courts' denial of relief was not contrary to, or an unreasonable application of, federal law. Temple is not entitled to relief on this issue.

## VII.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Temple's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[47]

New Orleans, Louisiana, this 7th day of September, 2018.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[47]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.