**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DAVID TEMPLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-1536** |
| **DARREL VANNOY** | **SECTION "B"(4)** |

## ORDER AND REASONS

Before the Court are the Magistrate Judge's Report and Recommendation to dismiss petitioner David Temple's request for habeas corpus relief (Rec. Doc. 8) and petitioner's objections to the report and recommendation (Rec. Doc. 9). For the reasons discussed below,

**IT IS ORDERED** that petitioner's objections are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Magistrate Judge's Report and Recommendation is **ADOPTED** as the opinion of the court; and

**IT IS FURTHER ORDERED** that the petition for § 2254 habeas relief is **DISMISSED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

David Scott Temple ("petitioner") is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. *See* Rec. Doc. 8 at 1. On February 6, 2015, petitioner was charged by a bill of information in St. Tammany Parish with one count of aggravated second degree battery and one count of second degree kidnapping. *See id.* On February 19, 2015, petitioner entered a plea of not guilty to the charges. *See id.*

1

At trial, the State intended to prove that between November 22 and 24, 2014, petitioner imprisoned his girlfriend in the residence they shared, repeatedly inflicting physical abuse upon her and refusing to allow her to leave, and that on November 22, 2014, he beat the victim with a flashlight, two metal candle holders, and his belt, fracturing her patella with a candle holder. *See* Rec. Doc. 8 at 1-2. Petitioner also slammed the victim's head into a hard floor before cutting her clothes off with a pocket knife, rendering her completely naked. *See id.* Afterwards, petitioner dragged the victim by the hair outside and fastened her to the back of his truck with a chain and dog collar. *See id.* Petitioner then drove the truck around an adjacent field in a "doughnut" fashion. *See id.* Petitioner later unfastened her, and attempted to chase her in the field with the truck. *See id.* After the two returned to their residence, petitioner made the victim shower and clean herself, threatened to kill both her and her daughter, and explained in detail how he would. *See id.*

The next day, petitioner forced the victim to clean the house in an effort to eliminate any sign of violence or criminal activity. *See id.* When a neighbor returned home on November 24, 2014, the victim sought and found assistance and refuge. *See id.* On November 25, 2014, petitioner was arrested in Washington Parish pursuant to an arrest warrant. *See id.*

A jury trial took place on August 10 and 12, 2015. *See id.* At trial two officers testified, and pictures of the victim's injuries were presented. *See id.* at 12. Shortly thereafter, petitioner indicated that he wanted to plead guilty, and entered a guilty plea to both counts and to a multiple bill filed by the state. *See id.* at 2. The trial court sentenced petitioner to concurrent sentences of fifteen years in prison on count one and sixty years in prison as a second offender on count two, with the latter sentence to be served without benefit of probation or suspension of sentence and without benefit of parole for the first two years. *See id.* at 2-3.

Petitioner did not seek timely appeal of his conviction. *See id.* at 3. On December 21, 2015, he submitted an application for post-conviction relief to the state trial court, alleging that he was denied his right to a direct appeal. *See id.* The trial court denied petitioner's application on February 22, 2016, finding that he knowingly waived this right during the guilty plea colloquy. *See id.* Petitioner did not seek review of this ruling. *See id.*

On March 30, 2016, petitioner submitted a second application for post-conviction relief to the trial court, asserting: (1) he was denied effective assistance of counsel; and (2) that the trial court abused its discretion by accepting his guilty pleas. *See id.* The trial court denied relief, and held that petitioner had failed to prove ineffective assistance of counsel under *Strickland v.*

3

*Washington*. *See id.* at 3-4. The court denied relief on the second issue on the grounds that it was repetitive of his prior application, citing La. Code Crim. P. art. 930.4. *See id.* at 4.

The Louisiana First Circuit denied petitioner's related writ on September 22, 2016. *See id.* It found that petitioner's plea and waiver of his rights were both knowing and voluntary, and that his ineffective assistance of counsel claim was waived by the unconditional guilty plea. *See id.* Finally, on January 12, 2018, the Louisiana Supreme Court denied petitioner's writ application, holding that he failed to prove ineffective assistance of counsel under the requirements set forth in *Strickland*, and also that he failed to meet his burden of proof on his second claim. *See id.* On February 14, 2018, petitioner submitted the instant federal habeas petition, in which he asserted that: (1) he received ineffective assistance of counsel at trial; and (2) the state court abused its discretion by accepting his guilty plea. *See* Rec. Doc. 1 at 4.

## LAW AND FINDINGS

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls for purposes of this 28 U.S.C. § 2254 habeas corpus petition. *See Poree v. Collins*, 866 F.3d 235, 245 (5th Cir. 2017) ("Federal habeas proceedings are subject to the rules prescribed by the Antiterrorism and Effective Death Penalty Act..."); *see also Flanagan v. Johnson*, 154 F.3d 196, 198 (5th

Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)) (holding that AEDPA applies to habeas corpus petitions filed after the date the act went into effect).

The AEDPA standard of review provides different standards for questions of fact, questions of law, and mixed questions of fact and law. Regarding questions of fact, a presumption of correctness applies to the state court's findings. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus...a determination of a factual issue made by a State court shall be presumed to be correct."). A petitioner seeking to overcome this presumption bears the burden of doing so by "clear and convincing evidence. *See id.* On review, the Court must give deference to state court factual findings unless they "were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2).

The standard of review for both questions of law and mixed questions of law and fact is articulated in § 2254(d)(1). *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000) ("Under [§ 2254(d)], we review pure questions of law and mixed questions of law and fact under § 2254(d)(1)..."). Under this standard, deference must be given to the state court's decision unless that decision is "contrary to or involves an unreasonable application of clearly

5

established federal law, as established by the Supreme Court of the United States." *Id.*

A state court decision is contrary to federal law if: (1) the state court applies a rule different from the governing law set forth in the Supreme Court's cases; or (2) the state court decides a case differently than the Supreme Court has on a set of "materially indistinguishable facts." *See Poree*, 866 F.3d at 246; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

A state court's decision involves an unreasonable application of federal law when it identifies the correct legal rule, but applies it unreasonably to the facts of the case. *See White v. Woodall*, 572 U.S. 415, 426 (2014). Under the unreasonable application clause, the burden is on the petitioner to demonstrate that the state court's determination was objectively unreasonable. *See Price v. Vincent*, 538 U.S. 634, 641 (2003); *see also Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

There is a distinction between an incorrect application of federal law and an unreasonable one. *See Williams*, 529 U.S. at 410. On review, an incorrect application of federal law will be affirmed provided that it was not also unreasonable. *See id.* at 411 ("...a federal habeas court may not issue the writ simply because...the relevant state-court decision applied clearly

established federal law erroneously or incorrectly...[r]ather, that application must also be unreasonable.").

B. **Ineffective Assistance of Counsel**

An ineffective assistance of counsel claim presents a mixed question of law and fact. *See Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2010); *see also Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). To dispose of this claim, the Court must determine whether the state court's denial of relief was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court. *See Hill*, 210 F.3d at 485; *see also* 28 U.S.C. § 2254(d)(1).

*Strickland v. Washington*, 466 U.S. 668, 687 (1984) set the appropriate test to apply when a petitioner challenges a guilty plea based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Under *Strickland*, a petitioner claiming ineffective assistance of counsel must prove: (1) that counsel's performance was deficient; and (2) that said deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. A court may dismiss a claim if the petitioner fails to satisfy either prong of the *Strickland* test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995) ("In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a

petitioner's failure to meet either prong of the test."); *see also Strickland*, 466 U.S. at 697.

To show that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 687-88). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689). The petitioner bears the burden of overcoming this presumption. *See id.* In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted).

Regarding counsel's duty to investigate, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. Furthermore, "strategic choices made after thorough investigation...are virtually unchallengeable..." *Id.* at 690.

To show that counsel's deficient performance prejudiced the defense, the petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bell*, 535

U.S. at 695 (quoting *Strickland*, 466 U.S. at 694). To satisfy this requirement in the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.[1]

Regarding allegations of failure to investigate, a petitioner "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). Furthermore, when a petitioner alleges a failure to investigate or discover potentially exculpatory evidence on part of counsel, "the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led

---

[1] While the Magistrate Judge initially mistakenly referenced a preponderance of the evidence standard in his Report and Recommendation, citing *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000), he subsequently cited to and appropriately applied the correct reasonable probability standard in his analysis, as does this Court. *See Chester v. Thaler*, 666 F.3d 340, 368 (5th Cir. 2011) (citing *Williams*, 529 U.S. at 405-406) (holding that it would be error for a court to deny relief on grounds that petitioner failed to prove ineffective assistance by a preponderance of the evidence, because *Strickland* only requires petitioner to demonstrate a "reasonable probability" of a different outcome).

counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. Making this determination depends largely "on a prediction whether the evidence likely would have changed the outcome of a trial." *Id.*

Likewise, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.*

"[E]ven where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994) (quoting *U.S. v. Diaz*, 733 F.2d 371, 376 (5th Cir. 1984)). "A valid guilty plea waives all nonjurisdictional defects in the proceedings against a defendant." *Diaz*, 733 F.2d at 376 (citing *Barrientos v. United States*, 668 F.2d 838, 842 (5th Cir. 1982)). Here, petitioner's ineffective assistance claim is likely waived by virtue of his valid guilty plea, discussed below. Regardless, all of petitioner's ineffective assistance claims are without merit.

First, petitioner alleges that counsel failed to "fully" investigate. *See* Rec. Doc. 9 at 2. He alleges that counsel's failure to investigate is evidenced by the lack of time spent investigating and "fully" reviewing the files, based on time sheets

submitted by counsel to the public defender's office. *See id.* Petitioner asserts that a full investigation and review of the case files would have led counsel to discover his proclivity to drink alcohol, and thus, the viability of an intoxication defense. *See id.*

This argument is rendered moot, because counsel demonstrated that he was in fact aware of petitioner's drinking tendencies when he stated during the plea colloquy, "[Temple] wanted to apologize...and tell the court...about his alcoholism..." *See* Rec. Doc. 1 at 155. For this reason, there was no failure to investigate or discover "potentially exculpatory evidence." Furthermore, petitioner's general drinking tendencies do not constitute potentially exculpatory evidence. As discussed below, the state intoxication defense only contemplates intoxication at the time that the crime was committed. Petitioner offers no evidence to prove that he was in fact intoxicated at the time of the offense.

Second, petitioner's objection reiterates his claim that he received ineffective assistance of counsel when counsel failed to present an intoxication defense at trial. *See id.* at 5. This claim fails to satisfy both prongs of *Strickland*.

Regarding deficient performance, a failure to present one particular defense likely falls within the wide range of reasonable professional assistance described in *Strickland*—it could certainly be considered a tactical choice or sound trial strategy. The

failure to present a particular defense does not necessarily amount to incompetence. In any case, it is practically impossible to judge counsel's performance because Temple changed his plea before counsel had an opportunity to present any defense, intoxication or otherwise. Therefore, the deficiency prong of *Strickland* is not satisfied.

Regarding prejudice, even if the failure to present an intoxication defense was error, it did not likely prejudice petitioner. Again, counsel cannot be held to have prejudiced petitioner into pleading guilty by failing to present a defense when petitioner decided to change his plea to guilty *before* counsel had an opportunity to present a defense. Furthermore, the record indicates that Temple changed his plea to guilty because he did in fact commit the crimes alleged against him, and so as to avoid dragging the victims through an unnecessary trial. *See* Rec. Doc. 1 at 155, 165-66. The defense has not been shown to have any bearing on Temple's decision to plead guilty.

Moreover, failure to advise petitioner of or present an intoxication defense did not likely prejudice petitioner, because it is unlikely that it would have succeeded at trial. The state intoxication defense states in pertinent part, "[w]here the circumstances indicate that an intoxicated...condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a

defense to a prosecution for that crime." La. Rev. Stat. Ann. § 14:15 (2018). To successfully present an intoxication defense, a defendant must prove: (1) that defendant was intoxicated at the time of the crime; and (2) that said intoxication precluded the presence of specific criminal intent or special knowledge required for that crime. *Id.*

The state intoxication defense would not have been a viable defense against the second degree kidnapping charge. The record is devoid of any evidence that Temple was in fact intoxicated at the time he committed the crime. Furthermore, second degree kidnapping in Louisiana is not a specific intent crime. *See* La. Rev. Stat. Ann. § 14:44.1 (2018); *see also State v. Cerda-Anima*, 119 So.3d 751, 759 (La. App. 5 Cir. 2013) (holding that the state intoxication defense is not applicable to a second degree kidnapping charge because it is a general intent crime). Therefore, the defense is not available to show that petitioner lacked the requisite intent to commit the crime. Additionally, no "special knowledge" was needed in this instance to commit the crime.

Similarly, Temple would not likely have succeeded in presenting an intoxication defense regarding his aggravated second degree battery charge, because there is nothing in the record evidencing that Temple was intoxicated at the time of the crime. For these reasons, petitioner's ineffective assistance of counsel claim is without merit.

**C. Knowing and Voluntary Plea**

Whether a guilty plea is valid is a question of law, although historical facts are entitled to a presumption of correctness. *See Parke v. Raley*, 506 U.S. 20, 35 (1992) (citing *Marshall v. Lonberger*, 459 U.S. 422, 431 (1983)); *see also United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)). Accordingly, the inquiry before this Court is whether the denial of relief was contrary to, or an unreasonable application of, federal law. *See Hill*, 210 F.3d at 485; *see also* 28 U.S.C. § 2254(d)(1).

For a guilty plea to be upheld on habeas review, it must have been made "knowingly, voluntarily, and intelligently." *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000) (citing *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). A plea is "constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Generally, a convicted petitioner "may not collaterally attack a voluntary and intelligent guilty plea." *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991). Accordingly, to establish that the trial court erred in accepting his guilty plea, petitioner must show that his plea was not: (1) voluntary or (2) intelligent.

Whether a plea is voluntary "is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v.*

14

*Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). A defendant's guilty plea is rendered involuntary when it is "induced by deception, an unfulfillable promise, or misrepresentation..." *Amaya*, 111 F.3d at 389; *see also Brady*, 397 U.S. 755 (holding that a guilty plea entered by one fully aware of the direct consequences must stand unless induced by threats, misrepresentation, or improper promises).

A plea is intelligent only if prior to entering it, the defendant first receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). "To be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequences.'" *Hernandez*, 234 F.3d at 255 (quoting *Boykin*, 395 U.S. at 244). To satisfy this requirement, it is only necessary that the "defendant...know the maximum prison term and fine for the offense charged." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990); *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982).

In support of his attack against making a knowing and voluntary guilty plea, petitioner reiterates in his objection that he was a professional cowboy, had an alcohol problem, had a sixth grade education, and had to have assistance with his driver's license test due to illiteracy. He further contends

15

that the court "erroneously determined" that he was able to maintain a checking account. *Id.* at 9. In sum, petitioner contends that "no court has considered...that [he] was unable to read or write; or that he could not fully appreciate the situation he was in." *Id.*

None of these arguments support petitioner's claim that his plea was not knowing and voluntary. Petitioner has failed to present any evidence that his plea was induced by deception, misrepresentation, threat, or improper promise. Accordingly, he has failed to prove that his plea was not voluntary.

Petitioner does not expressly assert that his plea was not intelligently made. Regardless, the record reflects that the guilty plea was intelligently made because petitioner received real notice of the true nature of the charges against him and understood the maximum length of time he could receive in sentencing. *See* Rec. Doc. 1 at 161-63. Furthermore, petitioner acknowledged under oath that he understood that he was being charged with aggravated second degree battery and second degree kidnapping. *See id.* After the court read the elements required to prove each count and the corresponding sentencing range, petitioner acknowledged under oath that he understood. *See id.* Finally, petitioner conceded several times on the record and under oath that he was pleading guilty to the crimes because he was in fact guilty of having committed them. *See id.* at 165-66.

16

For these reasons, the state court's determination that petitioner's claim was without merit is not contrary to, or an unreasonable application of, federal law. Accordingly, the denial of relief on this issue is proper.

New Orleans, Louisiana this 30th day of July, 2019

_____
SENIOR UNITED STATES DISTRICT JUDGE